UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VCA CLINIPATH LABS, INC.,

    Plaintiff/Counter-Defendant,

                                                 Case No. 11-12237
-vs-                                            Hon: AVERN COHN

THE PROGRESSIVE PET ANIMAL
HOSPITALS, P.C. and
JEFFREY ROTHSTEIN, D.V.M.,

    Defendants/Counter-Plaintiffs.

_____/

**DECISION**

**I. Introduction**

**A.**

This is a breach of contract case tried to the Court over three (3) days in September, 2013. Plaintiff VCA Clinipath Labs, Inc. (VCA) entered in a contract with defendants, The Progressive Pet Animal Hospitals, P.C. (Progressive) and veterinarian Jeffrey Rothstein, DVM (Rothstein) requiring VCA to provide exclusive laboratory services to Progressive for five (5) years. The contract also required Progressive to purchase a minimum of $105,000.00 worth of laboratory services per year. As an inducement for Progressive to enter in the contract, VCA loaned it $40,000.00 and waived the annual repayment as long as Progressive purchased the minimum $105,000.00 worth of laboratory services per year.

1

In addition, VCA provided special price discounts to Progressive.

VCA claims Progressive breached the contract after three years by not using VCA's veterinary laboratory services for its full term, and VCA lost the profits it would have made had the contract run its term. VCA's complaint is in three counts:

- Count I     Breach of Contract
- Count II     Money Lent
- Count III     Unjust Enrichment

VCA has agreed to dismiss the unjust enrichment claim.

Progressive counterclaims and says it had the right to terminate the contract prior to the expiration of its full term because VCA defaulted on the contract by overcharging Progressive. The contract obligated VCA to provide Progressive with a "cap" discount on nearly all diagnostic services ordered by Progressive. At some point, Progressive discovered that VCA was using a cap rate that was much higher than provided in the contract, resulting in an overcharge of approximately $22,000.00. Although VCA acknowledged the overcharge when it was brought to its attention, and it agreed to an adjustment accordingly, Progressive says that this was a breach of the contract that relieved it of its own obligations for the remaining period of the contract. Progressive's counter complaint is in two counts:

- Count I     Breach of Contract
- Count II     Fraud

At trial, the following witnesses testified: Rothstein, Darin Nelson, a VCA salesperson (by video), and Brian Brown, VCA's controller.

The exhibits introduced at trial were the contract, a host of e-mails, and VCA's

calculation of its lost profits.

### B.

#### 1.

For the reasons that follow, VCA is entitled to its lost profits had the contract run to term. In sum, Progressive and Rothstein were in breach when they terminated the contract. The contract, which had approximately two (2) years left to run, was terminated so Progressive could accept a more lucrative deal from VCA's primary competitor.

The misapplication of the cap rate which led to an overcharge by VCA was not a material breach of the contract and did not give VCA a right to terminate the contract. It was simply a miscalculation of a refund rate which was immediately corrected when called to VCA's attention; it was not intentional. Therefore, defendants' counter complaint does not have any merit.

#### 2.

What follows are separate findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1).

## II.  Findings of Fact

The following are the relevant facts adduced at trial, giving proper weight to the relevant testimony and exhibits, and properly assessing the credibility of the witnesses.

1. VCA provides laboratory services to animal hospitals and veterinarians across the United States.

2. VCA does business as Antech Diagnostics, or Antech Diagnostics, Inc.

3. Rothstein is a veterinarian who operates animal hospitals and provides veterinary services in Southeastern Michigan.

4. Progressive operates several animal hospitals in Southeastern Michigan, and is owned by Rothstein.

5. Rothstein and Progressive are sometimes referred to individually, and sometimes collectively as Progressive. The contract at issue was signed "Animal Hospital Owner(s), Dr. Jeffrey Rothstein, Its President."

6. VCA services animal hospitals in North America; Progressive operates animal hospitals in Southeast Michigan.

7. On or about July 14, 2008, VCA and Progressive entered into a written five (5) year contract, a "Services and Cap Agreement," under which VCA was to be Progressive's exclusive provider of veterinary laboratory services.

8. Progressive terminated the contract with VCA in September, 2010, prior to the expiration of the five (5) year term, notwithstanding the fact that the contract did not provide for early termination.

9. Prior to signing the contract with VCA, Progressive purchased the majority of its laboratory services from IDEXX Laboratories, Inc. (IDEXX), under a verbal agreement.

10. On or about June 25, 2008, Rothstein, on behalf of Progressive, signed the contract. Rothstein was also a party to the contract as an individual.

11. The contract clearly distinguished between the obligations of VCA and Progressive.

12. Some of the important provisions of the contract are:

- Progressive was to use the service of VCA exclusively.

- Progressive was to purchase a minimum of $105,000.00 in services annually.

- The fees for individual laboratory services were reflected in Annex 1.

- Progressive was to receive a 45% discount off of VCA's list prices.

- There was a set monthly fee -- the cap rate -- charged to each Progressive hospital for unlimited laboratory usage. The rate was to be adjusted for each hospital by adding 80% of any amount actually accrued over the cap rate during the previous years. The initial cap rate for the individual hospitals was set out in the contract.

13. As part of the inducement to sign with VCA, the contract provides for a five (5) year loan of $40,000.00 to Rothstein.  VCA was to forgive the annual $8,000.00 loan repayment requirement as long as $105,000.00 was paid to VCA each year.

14. The contract stated:

    The remedies available to Antech [VCA] hereunder are intended to compensate Antech for the Loan and discounts provided hereunder, which Loan and discounts would not have been provided unless Animal Hospital agreed to the Minimum Average Annual Fee requirements set forth herein, the requirements set forth in Section 1 regarding exclusivity, and the payment for Laboratory Services hereunder in a timely manner.

    The contract also stated that it "constitutes the entire understanding and agreement of the parties," and that it "may be amended only by a written agreement executed by all of the parties to this Agreement.

15. Laboratory charges were passed on to Progressive's customers at a marked up price.

16. Competition between VCA and IDEXX for laboratory work was intense.

17. Prior to deciding to terminate VCA, Rothstein and Progressive were satisfied with VCA's services.

18. In or about July, 2010, Rothstein was contacted by IDEXX about terminating VCA and purchasing laboratory services from IDEXX.  IDEXX told Rothstein it could offer a better deal than Progressive was receiving from VCA.

19. On September 09, 2010, Rothstein e-mailed VCA explaining a "very aggressive" offer from IDEXX in exchange for an extended contract, and said:

    It is aggressive and ma[y] be hard to turn down unless Antech can come close with similar incentives.  My main concern is the dollar value of incentive for lab services listed in #3, new equipment is good too.  I would consider extending my contract with Antech for an additional 2 years if we could come close to meeting the Idexx offer.  I have to ask you/Antech to work quickly in review of my account.  Exxon's (sic) given me just approximately 1 week to accept their offer or they may pull it???  Not sure if that is rhetoric or not, but I would like to reach

5

>   a decision as well.  Please let me know ASAP if you think there
>   is a chance that Antech will consider a counter offer.
>
>   Thanks so much for your help.  I always appreciate it and if
>   possible will be happy to stay put with Antech.

20. By leveraging the IDEXX offer, Rothstein was attempting to get VCA to give him better terms.  As part of this effort, and in violation of the terms of the contract, Rothstein gave IDEXX VCA's prices.

21. In response to Rothstein's efforts, VCA expressed a willingness to improve the terms of the contract.  Rothstein was not satisfied with VCA's new terms.

22. During the course of the efforts to improve VCA's terms, Rothstein discovered that Progressive had been overcharged under the cap rate.  Rothstein called the overcharge to VCA's attention.  VCA reviewed its records, recognized the overcharge, and immediately agreed to an adjustment.  VCA acknowledged an overcharge of $22,064.55.  The overcharge was *de minimis*.  The overcharge had no effect on Progressive's operations, and offered no basis for termination of the contract.  No evidence was proffered at trial showing that the overcharge was intentional.

23. On September 21, 2010, Rothstein terminated the contract.  The same day he signed a seven (7) year contract with IDEXX for laboratory services.

24. Rothstein still owed approximately $23,000.00 on the loan at the time of termination.

25. The switch to IDEXX from VCA was motivated by the terms IDEXX offered in comparison to the terms of the contract.  The overcharge on the cap rate played no part in the switch.

26. Early termination of the contract by Progressive caused VCA to lose the profits it would have made had Progressive continued to use VCA's laboratory services for the five (5) year term of the contract.

27. The lost profits suffered by VCA are $183,069.50, computed as follows:

    | | |
    |---|---|
    | Anticipated Revenue per the Agreement | $525,000.00 |
    | Revenue Actually Received | ($224,657.19) |
    | Lost Revenue | $300,342.82 |
    | Variable Costs | ($95,208.67) |
    | | |
    | Lost Profit | $205,134.15 |
    | Cap-Rate Miscalculation | ($22,064.65) |

    Damages        $183,069.50

28. VCA's profit margin was 68%.

29. Progressive's fixed costs would have been the same with or without VCA's payments under the contract.  The amount still owed VCA under the loan would have been fully paid had the contract continued for the full five (5) years.

30. Rothstein was not particularly credible as a witness.  His "loss of confidence" in VCA after discovery of the calculation error was an afterthought used to justify termination because of a better deal offered by IDEXX.

### III. Conclusions of Law

The conclusions of law relating to the case follow.

1. California law applies, as the parties agreed to in Section 6 of the contract. The Sixth Circuit recently explained that, where "[a] claim that a particular contract provision operates as a choice of law provision[,]" courts "use the contract interpretation law of the jurisdiction in which the purported choice of law agreement was signed" in order "to discern the nature and validity of the term." *Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 646 (6th Cir. 2013).  Here, the parties agree that California law applies and that the choice of law provision in Section 6 of the contract is valid.

2. VCA has established that Progressive and Rothstein breached the contract. Under California law, a breach of contract requires proof of the following elements: (1) existence of an agreement; (2) performance under the agreement; (3) breach; and (4) damages.  *Mintz v. Mark Bartelstein and Assocs., Inc.*, 906 F. Supp. 2d 1017, 1036 (C.D. Cal. 2012) (quoting *Oasis West Realty, LLC v. Goldman*, 124 Cal.Rptr.3d 256 (2011)).  VCA has

established these elements. There is no dispute that the parties entered in a contract on June 25, 2008. VCA performed its obligations under the contract, which Rothstein admitted at trial were satisfactorily performed. The contract required Progressive to use VCA's veterinary lab services exclusively for five (5) years. Progressive's cancellation of the contract after three (3) years to enter in a contract with IDEXX was a breach of the contract. VCA suffered damages in the form of lost profits, as established at trial, and as explained above.

3. Loss of profits is the proper measure of damages to award VCA for Progressive's and Rothstein's breach of contract. Cal. Civ. Code § 3300 states,

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.

As explained by the California Supreme Court, "[l]ost profits may be recoverable as damages for breach of a contract." *Sargon Enters. v. Univ. of Southern Cal.*, 149 Cal.Rptr.3d 614, 633 (2012). Indeed, the "general principle [is] that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent." *Id.* at 633–34 (citing *Grupe v. Glick*, 26 Cal.2d 680 (1945) (internal quotation marks omitted).

4.  To determine lost profits damages, the gross amount VCA would have received but for the breach must be determined. From that amount, the expenses VCA would have incurred must be deducted. Cal. Civ. Jury Instructions, 3903N, Lost Profits. *See also Greenwich S.F., LLC v. Wong*, 190 Cal.App.4th 739, 765 (2010) ("[T]o determine the amount of any lost profits, the jury must determine the gross amount the plaintiffs would have received had the contract been performed and then subtract from that amount the costs"). Here, as shown in finding of fact #27, the evidence at trial made reasonably clear that VCA suffered lost profits in the amount of $183,069.50.

5.  Rothstein, as a party to the contract, is personally liable for the damages suffered by VCA. *Antech Diagnostics, Inc. v. Downers Grove Animal Hosp. & Bird Clinic, P.C.,* No. 12C2736, 2012 WL 2567045, at *3–*4 (N.D. Ill. 2012).

6.  VCA's miscalculation of cap rates that led to an overcharge was not a material breach of contract that excused Progressive's and Rothstein's obligations under the contract. Under California law, "[w]hen a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011) (citations omitted). Indeed, "[t]he law sensibly recognizes that although every instance of noncompliance with a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated." *Nivo 1 LLC v. Antunez*,

      159 Cal.Rptr.3d 922, 925 (2013) (quotation marks omitted). "The distinction between a material and inconsequential breach is one of degree . . . weigh[ing] the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, [and] the cruelty of enforced adherence." *Id.* At 925–26 (citing *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d. 1032, 1051 (1987) (internal quotation marks omitted)). Here, the miscalculation of cap rates was a mistake that VCA remedied as soon as Rothstein brought it to VCA's attention. It was not a material breach that discharged Progressive's and Rothstein's obligations under the contract.

7.     The miscalculation of cap rates was not fraudulent. Fraud requires (1) a material representation; (2) that is false; (3) intentionally or recklessly made as a positive assertion; (4) made with the intention that it should be acted upon; (5) that the injured party actually relied on it; and (6) suffered injury. *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976); *Lazar v. Superior Court*, 49 Cal.Rptr.2d 377 (1996).[1] Here, the miscalculation of cap rates was unintentional and immediately remedied when brought to VCA's attention.

### IV. Conclusion

---

[1] The fraud claim is a tort claim and is not governed by the choice of law provision in Section 6 of the contract. However, both Michigan and California provide the same requirements for actionable fraud.

When all is said and done, this is a simple breach of contract case. Progressive and Rothstein entered into a five (5) year non-cancelable contract for VCA's laboratory services. When a better deal came along, Progressive and Rothstein terminated VCA's services and began using IDEXX's services. This was a breach of the contract. Rothstein and Progressive had no good reason to terminate VCA's services because VCA's miscalculation of cap rates, which was immediately remedied, was not a material breach of the contract. As a consequence, VCA is entitled to the profits it would have made had it provided laboratory services for the entire five (5) years. As parties to the contract, Rothstein and Progressive are jointly liable. An appropriate judgment will be entered in favor of VCA in the amount of $183,069.50 and dismissing defendants' counter complaint.

                                                           s/Avern Cohn  
                                                           UNITED STATES DISTRICT JUDGE

Dated: November 22, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 22, 2013, by electronic and/or ordinary mail.

                                                           s/Carol Bethel for Sakne Chami  
                                                           Case Manager, (313) 234-5160